Good morning, your honors. I am Edgardo Quintanilla. I represent Mr. Marinero-Turcios. This is a case that involves an issue of citizenship. The petition for review involves a denial of an unopposed motion to reopen, reconsider, and remand made to the Board of Immigration Appeals. The Board of Immigration Appeals denied this unopposed motion on March 21, 2006. Well, counsel, what bothers me about this case is your client had every opportunity to show something, something, to establish that he had the right of citizenship. He talked about the fact that he was 18 when his father became naturalized, but that's not enough. Your honor, at the time the client was before the immigration court, my client was not represented by counsel. And so we can have fault at the same time. The record is clear that the immigration court did not go beyond what it's supposed to do to basically be more attentive to the needs of a person who is unrepresented before the immigration court. But if the only thing that the person, granted he may not have been represented or even represented well, but the point is that when asked what makes you think you're a citizen, he said he was 18 when his father got naturalized. Well, that's no good. It's not enough. If he were 17, maybe, your honor, maybe you'd have a case. But if the only evidence is an evidence which disqualifies him, I don't understand how we can proceed. Your honor, the record before the immigration court also indicates that the petitioner testified to the immigration court that his father was a United States citizen before he turned 18. Where is it in the record that says he was before 18? Certified is at the card at pages 79 and at page 89. At the same time, the immigration court never made a finding that my client was not credible regarding the evidence that he had presented. Furthermore, the immigration court, when it rendered its decision, it never made a specific finding of fact and law to present all the favorable and unfavorable evidence that supported my client's position as to the issue of citizenship. The Board of Immigration Appeals, when it made this decision regarding the unopposed motion to reopen, reconsider, and remand, did not specify and did not consider all of the favorable and unfavorable factors. Well, counsel, on the merits, as specific, assuming we were retrying this right now, what could you show to establish that this individual, in fact, was an American citizen? Very well, your honor. Is there a naturalization paper? Is there a document of some sort? What do you have? We would show, at the very least, what we presented to the Board of Immigration Appeals, and this was a motion that was unopposed. What we presented to the Board was evidence that the mother became a United States citizen before my client turned 18 years of age, in addition to the testimony. But the law at that time, as I understand it, required both parents to be citizens. That is correct. Unless the person were illegitimate, and that wasn't established either. Is that right? It was not established. The facts do not indicate that. The immigration court did not go over all the favorable and unfavorable facts in the case, such as the testimony of my client that his father had become a U.S. citizen before he turned 18. Testimony is evidence before the immigration court, your honor. Incredible testimony has to be taken into consideration when making a determination whether a client should be granted the relief he seeks, he or she seeks, or the benefits he is seeking. In this case, the Board of Immigration Appeals should have remanded the case. And your honors, we believe that in this case, this court should send the case back to the DIA so the case can be remanded back to the immigration court for an initial determination of all the relevant facts. We presented to the Board, your honors, a prima facie case that my client has a claim to United States citizenship. Well, that's the problem. If you're relying on a prima facie case based on his mother's citizenship, that is not enough as a matter of law, because the law at that time required both parents. Isn't that true? Your honor, you're correct as to what the law indicates. But a prima facie case that his mother was naturalized doesn't help him in that context. It helps him 50% of the way. I see. Okay. The other 50% has to do with the father. The other 50% has to do with a credible testimony of my client that his father became a United States citizen because the motion was unopposed that tips the balance in favor of my client. That is our argument, your honor. I would like to reserve my time. You may do so, counsel. That's fine. Thank you. We'll hear from the government. Thank you. May it please the court, Chris Fuller from the Office of Immigration Litigation, Department of Justice in Washington. There are some numerous problems with their petition, but let's go to the cut to the quick. We don't deport United States citizens. Well, he says he is a citizen. The issue here, there is a documentary evidence that his mother became a citizen when he was 16. Yes. And at one point in the record, I was looking for it, but there's some lack of clarity in the testimony. But at one point, he did testify that both his parents had become citizens before he reached the age of 18. Yes, he said that at one time. That's an administrative record page 79. And he said, my parents, my father was my parents were citizens before I was 18. Then it administrative record page 117. He said, I was 18 when my parents I was 18 before my parents became. I mean, I was my parents were citizens before I was 18 or right when I was 18. So I don't know if that qualified me. Then at page 118, this is a colloquy between him and the immigration judge. The judge asked him, you are not sure what age you were when your parents. And Mr. Marinero said, my mom was when my mom became a citizen, I was 16. And when my dad became a citizen, I was 18. So the two previous circumstances, he was talking about his parents and was less than specific. In the one statement that he made, he said that his mom was he was 16 when his mom was naturalized. And his dad was naturalized when he was 18. In any event, the immigration judge. His parents were not married. His parents were married when he became 18. They were not married when he was born. But the birth certificate provided in the motion to reopen shows that indeed on the birth certificate shows both parents, including his father, and hence his legitimacy was in fact established. There's no there's no question that the provision in Section 321 of the INA for an illegitimate born child applies. He had both both of his parents acknowledge the paternity and hence his parents were there. Both parents need to be naturalized. Page 125 of the administrative record, the immigration judge told Mr. Marinero, who was now appearing for the third time without counsel after he said he had counsel. He said, look, if if you can bring me bring proof of citizenship. He said, I will reopen and terminate proceedings, quote, in a second, end quote. And you can tell in calling his lawyer by name, you can tell him I said that. We don't deport citizens. So ultimately, if it's still open, if he could provide a naturalization certificate for his father. And there is a certificate somewhere, if in fact he was naturalized. And it shows that his father was, in fact, naturalized before Mr. Marinero turned 18 years old. Then, in fact, he was a U.S. citizen. And this whole case goes away. How hard is it to get such a certificate? Is there can you go to the I guess it's the I.C.E. now and search the record somehow or ask for a certificate of your father's naturalization? Actually, Your Honor, would be the Citizenship and Immigration Service, C.I.S. C.I.S. All right. But I mean, it is a public record. There would be a record that not only of his naturalization certificate, but of his application, his N-400 application, and the assertation, I mean, the certification that he, in fact, was sworn in, an oath-taking ceremony with dates that such occurred. Why has the government not made an effort to locate this record? I mean, this person has a pretty strong claim that they may be a derivative citizen. We know that it's a locked deal on his mother's side, right, because she became that document is in the record. So she became a citizen when he was 16. The only issue is whether he was 17 or 18 or how old he was when his father became a citizen. Why isn't that something that the government ought to make an effort to ascertain? I know all the stuff about burdens of proof, but just in terms of, you know, as you say, we don't deport citizens. Correct. And he has a pretty decent claim here that he might be a citizen. I don't know the reasons why the government has not done that. Is the government willing to do it now? There is reference in the transcript that in a colloquy between the DHS attorney, Department of Homeland Security attorney, and the immigration judge making reference to Mr. Marinara's A-file, that there was a certificate in that A-file, or at least an indication as to the date of his father's naturalization. Then it got passed over. It was early on in the proceedings, and then it was never brought back again. Why isn't this something that the government can do? Well, I'm not saying that the government can do that, but certainly we're not obligated to do so. You don't have an obligation when it looks like somebody may be a citizen to determine that they may in fact be a citizen and not deportable? No. Under the burdens of proof, certainly there's no legal obligation for the government to do so, no. He has the burden of proving his citizenship, particularly whereas here his alienage is in fact proven by clear, convincing, unequivocal evidence to which he admits. He was born in El Salvador, and so his alienage is clear. It's his burden to show. Now, granted, could the government do that? I don't doubt that in fact someone could. But ultimately, legally, after all this time- Is the government willing to do so? I can't speak for the agency that I don't represent here. I represent the board here, thus the attorney general, and hence I cannot speak for CIA. Well, suppose we were simply to defer submission on this case for 60, 90 days, whatever was a reasonable time, to allow you and opposing counsel together to access that record and find out, yes or no, what the date of naturalization was. I have no problem with that because ultimately the question is, is he a derivative citizen or isn't he? At all terms- And that should be easily ascertainable. That's the point. That's the point, and we're going to ask Mr. Quintanilla as well. And ultimately, because of the immigration judge's offer, which still holds, if in fact the day before he were to be deported he shows up at immigration court with a motion to reopen showing the naturalization certificate that his father was naturalized before he turned 18, the deportation stops, he's a U.S. citizen. So there's the burden. He hasn't produced it. He produced the mother's, and ultimately he's now relying on some statement as to testimony as opposed to the certificate. I think a reasonable inference can be made that, indeed, if he had it, he'd produce it. But I have no problem with giving us additional time to look at this. Is there anything in the A file to suggest that there's some sort of question as to whether the father was ever naturalized? I don't know. I'm sorry, I can't answer that, Your Honor. I have not personally looked at the A file. But I have no difficulty in using due diligence, even though we don't bear that burden. I fully agree that it should be easily ascertainable. In some cases, you know, we're dealing with the Department of Homeland Security and CES, and they have millions of these, so I want to at least back off a little bit of the easily. Nonetheless, there should be a certificate somewhere, if he, in fact, were naturalized. And I don't think if there's a dispute that he was naturalized and that he is a U.S. citizen, the question is when. The question is the date. The date will make all the difference in the world, and that's discoverable. That's discoverable, and ultimately that burden is on him. But I have no problem in trying to ascertain that. But as soon as it's ascertained, the case is over. If, in fact, it is, as we believe it to be, that his father was naturalized after his 18th birthday. And that's where the rub lies. And ultimately here, the question is that the board abused its discretion in denying the motion, and on the legal basis, as opposed to the practicalities. The legal basis here, the board, he raised two issues in his motion to reopen and reconsider and remand. One was that the board erred in finding that he failed to file an asylum application within one year of his arrival. The board erred on that because it doesn't apply to lawful permanent residents like him. He was made a lawful permanent resident at a young age, age seven, I believe. The board acknowledged its error and then said, well, even though that bar to asylum doesn't apply, his criminal conviction for drug trafficking is an aggravated felony under the INA, and that bars him under INA section 208. And hence, there was no harm, no foul there because there was another bar to asylum. The second issue raised is this very one here with regard to the prima facie evidence. The board failed to look at the evidence, and we've discussed that fully. That's the rub. The board ultimately, because of the evidence in the record, and certainly the long time allowed for Mr. Marinero to produce the evidence and prove his citizenship as the law requires, ultimately did not abuse his discretion or violate the law because this court's precedent says that section 321, though repealed in the year 2000 by the Child Citizenship Act, indeed applies, did not apply retroactively, but the old section 321 applied, requiring both parents to be naturalized before his 18th birthday. So there's no abuse here by the board. I have no difficulty working outside the record, et cetera, to see if, in fact, there was a naturalization. But for the purposes of this petition, let's make it clear the board did not abuse its discretion.  Thank you, counsel. Mr. Quintanilla, I think you owe an explanation as to why you have never sought to produce this naturalization document of the father, because that would make your case. Certainly. Your Honor is correct that the client would benefit from having that information. Why don't you just go down to the CIS office and ask for a copy? Your Honor, that's not possible. Why? For many reasons. First of all, an attorney cannot simply go to the agency, let's say at 300 North Los Angeles Street, Room 1001, and ask to see a copy of a file for a client. What they're going to say is to submit a FOIA, a Freedom of Information Act, for that particular file. No, no, no, no. You heard opposing counsel. This is a public document. You apply for a copy like you would for a birth certificate. Your Honor, it's not available. It was seen that it would be available, but it's not available. Now, are you saying that because you have tried to secure this document and you've been refused by the agency? No, no, Your Honor. It's simply I don't know what the relationship is between the client and the father at the present time, and I have asked the client's cooperation, and unfortunately I have to rely on his cooperation to obtain the information for that particular file. He's got a pretty good incentive to cooperate here. Otherwise, he's going to be deported. Right. Unless there is an issue between father and son, the one who's entitled to review the file is the father. The father can request a file through a Freedom of Information Act, but if the father is not willing to do it for whatever reason, and I don't know why, then he would not be able to. It appears the government is willing to at least help you determine where the document is and find it. Yes, Your Honor. Would that be something that you would entertain as well? And I'm glad to hear that from counsel. And given those circumstances, I would say that this would be a case suitable to be sent to mediation. And through mediation, through the mediator, we can have those 90 days, 120 days necessary for the investigation. At this time, we look forward to working with the government. I would like to address one point. Well, now, we're just talking, just so you understand, counsel. Counsel of the government makes a pretty good argument that there has been no abuse of discretion here as a matter of law. The burden was on you to establish citizenship. There's not much doubt about that. And you have failed so far. They are now offering to help discover the one piece of paper that will either prove your case or throw it out. Your Honor, counsel's government may be a strong one. However, the government did not make any such argument when the appeal was made, and the government never made such argument when the motion to reopen was made. The motion was unopposed. Pursuant to ACFR 1003.2G3, a motion to reopen based on the evidence presented is deemed unopposed unless the government speaks otherwise. Counsel for the government never brought this argument before, never said there is a shift in terms of the burden. Counsel, I'm afraid maybe you misunderstand. The burden is on you. And there's some sympathy in this panel to allow you to ask this attorney for the Department of Justice to help you locate that form. Now, if your client says no, he won't sign any authorization or request, then you've got another problem. But right now, you have this opportunity, and I would suggest you pursue it. We would be very happy to work at our opportunity, and I believe the mediation panel will be, this case will be suitable for the mediation. Well, we haven't decided yet whether we're going to send it to mediation. Very well, Your Honor. Thank you very much, Your Honor. All right, thank you, counsel. Have a wonderful day. The case just argued will be deferred submission for a time to be determined by order of this court.
judges: O'scannlain, Graber, Gibson